[Civ. No. 412.   Fourth Appellate District.—September 10, 1931.]

PIGGLY WIGGLY YUMA COMPANY (a Corporation), Respondent, v. NEW YORK INDEMNITY COMPANY (a Corporation), Appellant.

Hickox & Trude for Appellant.

S. P. Williams and Dorsey Whitelaw for Respondent.

ALLEN, J., *pro tem.*—The defendant in this action appeals from a judgment on a bond which it issued to plaintiff. On February 25, 1927, defendant issued this bond indemnifying plaintiff against any loss it might sustain after February 9, 1927, by reason of any act of larceny or embezzlement by any of its employees set forth in the schedule attached thereto, of which the employee named in the complaint was one.

On December 23, 1927, the employee was called before a meeting of the officers of plaintiff, where he confessed to a shortage of four small items and made a general statement that, to the best of his knowledge he had appropriated to his own use the total sum of $6,240. Appellant complains that the trial court erred in admitting the statements of the employee made by him after his employment ceased. There is no testimony to show the discharge of the employee prior to the conversation testified to.

Section 1850 and subdivision 7 of section 1870 of the Code of Civil Procedure set out the law governing the admission of such testimony between the parties to the suit, while section 1851 of the Code of Civil Procedure lays down the rule as to the statements of third persons. The testimony offered was the statement made by the defaulting employee at the time he was first accused by plaintiff of his embezzlement. His appropriation of plaintiff's funds was the foundation for this suit and his statement in relation thereto comes within the rule announced.

In the case of *Butte County* v. *Morgan,* 76 Cal. 1 [18 Pac. 115, 117], wherein a suit was instituted against Morgan, who held both offices of county treasurer and tax collector and his bondsman for misappropriation of county funds, it was held that there was no error in the admission of a receipt to him by the auditor. This receipt contained on admission against interest by Morgan and was held admissible against him and his bondsman. The court said:

"He accepted without any question, the certificate of the auditor, which contained an express statement that he then

had in his hands, to be at once paid into the treasury, the amount in question; and he acted upon this statement by depositing it in the treasury. This conduct certainly amounts to an admission that the statement was true. This admission was evidence against the other defendants. For 'where the question in dispute between the parties is the obligation or duty of a third person, whatever would be evidence for or against such person is *prima facie* evidence between the parties'."

*Ellsworth* v. *Bradford,* 186 Cal. 316 [199 Pac. 335], and *Greve* v. *Echo Oil Co.,* 8 Cal. App. 275 [96 Pac. 904], lend support to this rule.

The next error complained of is that the trial court erred in finding that there was not a settlement between the employee and plaintiff. The bond provided, among other things, that "no act giving rise to a claim hereunder shall be condoned, nor any loss settled without the written consent of the surety first obtained".

At the time the employee was called before the officers of plaintiff he made confession to his defalcations and stated that to the best of his knowledge he had appropriated to his own use, without the knowledge of his employers, the total sum of $6,240. He gave the plaintiff a note for such an amount which was not necessarily such a settlement as contemplated in the bond. There can be little doubt but that the term "settle" has a double meaning, and is used alike to denote an adjustment of a demand and a payment. (*Auzerais* v. *Naglee,* 74 Cal. 60, 67 [15 Pac. 371].) The giving of the note must be construed in the light of the other facts in evidence. There is nothing to show that any settlement was made at the time the note was executed, nor that it was given in payment of the amount due plaintiff; there was no agreement on the part of the plaintiff that it would take the note in payment, and the defaulting employee did not so understand it. He explained how he arrived at the amount and how he came to execute the note. He testified that after he signed the note "they brought me up and throwed me in jail". Without some evidence to show that the parties intended that the note be a payment of the debt and a settlement, the court was justified in holding that it was given as evidence of a debt rather than a payment. (20 Cal. Jur. 920, and

cases cited.) In the light of all the circumstances of the case it would be most unusual for a corporation conducting the extensive business the plaintiff was transacting to accept a note for $6,240 from a defaulting clerk, who was making $40 per week, in payment of his defalcations when it held defendant's indemnifying bond in the sum of $2,000.

In order for the plaintiff to recover in this action it is necessary for it to allege and prove by competent evidence the contractual relations between the parties, the loss, according to the terms of the bond, and the amount of damages sustained, all of which were done by it.

■ The defendant objects to the evidence as to the amount of loss sustained by plaintiff. The books of the company were admitted in evidence over its objection, to show the amount of such loss. The question of the method of keeping these accounts and their correctness are seriously objected to by the defendant, but such objections only go to the weight of the evidence. There is nothing tending to show that the books were not properly kept nor that the entries therein were not correct, its argument going to the unreasonable and faulty bookkeeping system of the plaintiff.

The findings of fact are supported by the evidence and there being nothing which stamps such evidence as not being worthy of belief, it supports the findings.

We find no error in the record of the trial court. The judgment, therefore, is affirmed.

Jennings, Acting P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 6, 1931.