SECURITY INSURANCE COMPANY
OF HARTFORD, Plaintiff-Appellee,

v.

Harry S. and Betty L. WILSON, dba
Sands Restaurant,
Defendants-Appellants.

No. 84–1321.

United States Court of Appeals,
Tenth Circuit.

Sept. 2, 1986.

Patrick Dixon, Casper, Wyo., for plaintiff-appellee.

Frederick J. Harrison, Rawlins, Wyo., for defendants-appellants.

Before McKAY and SETH, Circuit Judges, and JENKINS, District Judge *.

JENKINS, District Judge.

Appellants, Harry S. and Betty L. Wilson, appeal from the district court's judgment in favor of appellee, Security Insurance Company of Hartford. On the parties' cross-motions for summary judgment, the district court determined that the Wilsons' claim for losses resulting from alleged employee dishonesty was properly denied under the terms of their business insurance policy because of the manner of proof they relied on in making their claim. We affirm.

I.

The following facts are not in dispute. In April 1979 the Wilsons purchased two businesses in Saratoga, Wyoming, and hired one Rose Neal to manage the businesses. On June 11, 1979, Security issued the Wilsons a general business liability policy with an endorsement for comprehensive crime coverage, including employee dishon-

* Honorable Bruce S. Jenkins, Chief United States District Judge for the District of Utah, sitting by designation.

esty coverage, with policy limits of $25,000. The endorsement provides in part as follows:

EXCLUSION.

Section 2. This endorsement does not apply:

\* \* \* \* \* \*

Exclusion (b). Under insuring agreement 1A or 1B (which cover employee dishonesty) to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence, or as to its amount, is dependent upon an inventory computation or a profit and loss computation....

The Wilsons claim that from April 1979 to September 1979 Rose Neal stole inventory and cash from the businesses. During the summer of 1981 Harry Wilson discussed the alleged thefts with his insurance agent and was advised to file a proof of loss with appellee, which he did in November 1981. On January 7, 1982, Security rejected this first proof of loss as untimely filed. Following proceedings before the Wyoming State Insurance Commissioner, Security agreed to waive this objection and invited the Wilsons to resubmit their claim. The Wilsons thereafter filed another proof of loss supported solely by a profit and loss statement prepared by their accountant. On February 24, 1983, Security rejected this proof of loss as well, this time on the basis of section 2(b), quoted above. Security did not investigate the Wilsons' claim beyond taking a sworn statement from Mr. Wilson. Security filed this action for declaratory relief, which the district court summarily granted.

## II.

The district court's ruling should be affirmed if it is clear from the record on appeal that there are no genuine issues of material fact to be tried and that Security is entitled to judgment as a matter of law. *Bee v. Greaves,* 744 F.2d 1387 (10th Cir.

1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). As the Supreme Court recently explained,

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The Wilsons assert six "genuine issues as to material fact" that they say preclude summary judgment against them. The first three of these center on the timeliness of the first proof of loss. This court can assume that the Wilsons timely filed their proof of loss and that Security voluntarily and intentionally waived any timeliness objection it might have had. Those facts simply are not material to the resolution of this dispute because the district court's judgment is footed on section 2(b), not untimeliness.

The next asserted issue of fact is that "other evidence besides the profit and loss statement" exists to prove "both the existence and the amount of the claimed loss." This simply is not a "genuine" issue of fact. No such "other evidence" was ever furnished, at least as to the *amount* of the loss.[1] Indeed, in his written statement to Security and in his sworn deposition testimony, Mr. Wilson indicated that no proof as to the amount of the alleged loss could be furnished, other than the profit and loss computations submitted. The language of section 2(b) is clear and unambiguous: a claim footed on alleged employee dishonesty must be supported by more than profit and loss computations. *See Lumbermens Mutual Casualty Co. v. Renuart-Bailey-Cheely Lumber & Supply Co.,* 387 F.2d 423, 425 (5th Cir.) (claimant under similar policy not allowed to recover any amount

---

1. The Wilsons did submit affidavits and offer other evidence supporting the fact of the loss, which this court can assume were adequate to raise a genuine issue of material fact on that point. Nevertheless, section 2(b) plainly requires that both the fact and the amount of the loss be supported by such independent evidence.

that it could not prove apart from profit and loss calculations), *modified on other grounds,* 392 F.2d 556 (5th Cir.1968); *Paramount Paper Products Company v. Aetna Casualty and Surety Company,* 182 Neb. 828, 157 N.W.2d 763, 768 (1968) ("proof, other than that arrived at by means of an inventory of profit and loss computation, is required" under contract). In opposing a motion for summary judgment, the Wilsons had the burden to come forward with other evidence of the amount as well as the existence of the alleged loss to raise a genuine issue of material fact for trial on those essential elements of their claim. Their failure to do so—their admitted inability to do so—amply supports the district court's summary judgment against them on that issue. *See Celotex Corp.,* 106 S.Ct. at 2553.

 Apparently recognizing the difficulty that section 2(b) poses for them, the Wilsons argue that Security waived its right to assert section 2(b) because it did not rely thereon when the first proof of loss was filed, but instead relied solely on the untimeliness objection. The Wyoming Supreme Court has stated:

> [T]here is authority for the holding that an insurer's assertion of one defense with knowledge of the existence of other grounds may raise a waiver or estoppel precluding the subsequent assertion of

such other ground where insured has been misled to his prejudice.

*Hawkeye-Security Insurance Company v. Essert,* 490 P.2d 1255, 1257–58 (Wyo.1971) (citations omitted).[2] The district court found this doctrine inapplicable for two reasons. First, the court concluded that the Wilsons had failed to demonstrate prejudice because, even if they had known of the section 2(b) basis for the denial of their claim, they could not have submitted proof in compliance with the policy requirements. We agree. Second, the court concluded that section 2(b) is in the nature of an *exclusion* rather than a defense. The Wilsons strenuously argue that the district court erred in this conclusion. However, the plain language of section 2(b) supports the district court. The section is entitled "Exclusion." It says the endorsement "does not apply" to any loss "the proof of which, either as to its factual existence, or as to its amount, is dependent upon … a profit and loss calculation." Proof of the amount of the loss in this case is dependent upon such a calculation. Therefore, the loss is excluded from coverage.[3] Waiver and estoppel cannot extend coverage to claims expressly excluded from coverage. *State Farm Mutual Ins. Co. v. Petsch,* 261 F.2d 331 (10th Cir.1958); *Sowers v. Iowa Home Mutual Casualty Ins. Co.,* 359 P.2d

**2.** Because no profit and loss statement was submitted with the first proof of loss, Security could argue that it did not then know of the objection footed on section 2(b), and therefore could not have waived it. Indeed, it appears from the record that no profit and loss statement was submitted with the *second* proof of loss, which was also rejected as untimely. The profit and loss statement was apparently submitted later, at which time Security interposed its objection footed on section 2(b). If this is the correct factual scenario, then Security did not waive its section 2(b) objection because it had no duty to so object until it actually received the profit and loss statement. Nevertheless, because it is unclear whether this was the actual historical sequence, because the trial court did not consider this possibility, and because Security did not make this argument at the trial court or on appeal, this court will assume that Security knew early of the inadequate proof of loss and thus could have raised its section 2(b) objection.

**3.** The Wilsons argue that to construe section 2(b) this way is to render their so-called "comprehensive" coverage illusory, because it may be impossible to prove the amount of a loss by any means other than profit and loss calculations. The other side of this coin is that to allow proof based solely on profit and loss calculations is to cover losses in amounts that might actually reflect poor bookkeeping or mismanagement. The policy language attempts to strike a balance by excluding only those claims the proof of which is dependent solely on speculative calculations. Nothing in that language prevents claimants from presenting independent evidence, direct or circumstantial, of the amount of the loss. Such other evidence may be sufficient to permit the additional reliance on profit and loss calculations. *See Fidelity & Deposit Co. v. Southern Utilities, Inc.,* 726 F.2d 692 (11th Cir.1984).

488 (Wyo.1961). Therefore, the district court correctly applied the law to the undisputable facts and properly rendered summary judgment in favor of Security on the Wilsons' waiver claim.

■ Finally, the Wilsons assert that there are genuine issues of material fact as to their bad-faith counterclaim. The Wilsons contend that Security had a duty to advise them of the policy limitations. Instead of reading the plain language of the policy, which would have revealed the fatal flaw in their proof of loss, the Wilsons mistakenly chose to rely on the representations of their insurance agent. We agree with the district court: the Wilsons cannot suggest that Security breached a duty of good faith by failing to reveal a clear and unambiguous limitation contained in a written exclusion which they simply failed to read, in disregard of their own duty. *See Machinery Center, Inc. v. Anchor National Life Ins. Co.*, 434 F.2d 1 (10th Cir.1970).

■ The Wilsons also contend that Security failed to investigate their claim. As the district court correctly observed, Security reasonably found that the Wilsons' claim was excluded from coverage. Where the claim, as submitted, is excluded by clear and unambiguous language in the policy, the insurer has no duty to investigate the claim further. *See Nautilus Virgin Charters, Inc. v. Edinburgh Insurance Company, Ltd.*, 510 F.Supp. 1092, 1101 (D. Md.) ("An insurer can hardly be expected to take steps to investigate and mitigate a loss when it has correctly concluded that the loss is not covered"), *aff'd mem.*, 673 F.2d 1314 (4th Cir.1981), *cert. denied sub nom. Lubin v. Edinburgh Ins. Co.*, 456 U.S. 945, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982). Having themselves failed to set forth specific facts, in addition to the profit and loss statement, to bring their claim within the coverage of the policy, the Wilsons cannot blame Security for failing to do so.

### III.

In summary, the district court correctly concluded as a matter of law that section 2(b), by its plain terms, excludes the Wilsons' claim because of the proof offered or capable of being offered. Security cannot be said to have waived that exclusion, because that would extend coverage where none existed before such "waiver." There are no genuine issues of fact material to the Wilsons' bad-faith counterclaim. The judgment of the district court is therefore

AFFIRMED.